UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KENNETH E. LODEN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v.    ) | Case No. 11-CV-0673-CVE-TLW |
| ) | |
| **BLUE CROSS AND BLUE SHIELD OF** ) | |
| **OKLAHOMA, a Division of Health** ) | |
| **Care Service Corporation,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

Now before the Court is Defendant's Partial Motion to Dismiss and Brief in Support Thereof (Dkt. # 16) and the Joint Motion to Extend Amended Scheduling Order (Dkt. # 44).[1] Defendant Blue Cross and Blue Shield of Oklahoma (Blue Cross) argues that plaintiff Kenneth E. Loden signed a waiver of his right to bring employment discrimination claims against his former employer, and Blue Cross asks the Court to dismiss all of plaintiff's claims except for his claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (ADEA).[2] Plaintiff responds that he signed the waiver under economic duress and the waiver is unenforceable under federal and Oklahoma law.

---

[1]   The parties jointly state that they will be unable complete discovery because the depositions requested by plaintiff will require travel to Chicago and Dallas, and depositions cannot be completed until January 2014. Dkt. # 44, at 3. They also state that the Court's ruling on the motion to dismiss will impact the parties' decision as to what discovery needs to be completed. The Courts finds that the joint motion (Dkt. # 44) for entry of an amended scheduling order should be granted.

[2]   The ADEA has a specific set of statutory and regulatory requirements for waivers of an employee's right to sue under the ADEA, but defendant does not request dismissal of plaintiff's ADEA claim and those requirements are not at issue.

**I.**

Loden began working for Blue Cross in November 2002 and he was 52 years old when he was hired. Dkt. # 10, at 2. At a regular management meeting in 2010, Blue Cross Vice President Anthony DeAngelo announced that the Information Technology Group would be reviewing Loden's division for a reduction in force (RIF) in order to reduce administrative costs. Id. DeAngelo stated that "low performers" would be targeted for the RIF. On August 4, 2010, Loden sent an e-mail to DeAngelo and Executive Director Jim Trout advising them that he was contemplating retirement within the next two to five years. Id. at 2-3. About one month later, Loden sent an e-mail to Trout stating that he intended to retire at the end of 2012. Id. at 3. On October 28, 2010, Trout informed Loden that his position was being eliminated as part of the RIF, and Blue Cross presented Loden with a written Separation Agreement.[3] Id. at 3. The Separation Agreement provided Loden 32 weeks of pay ($78,819) and provided that Loden would be able to maintain his health insurance for a period of time using post-tax income. Id. Under the Separation Agreement, Loden would agree to waive any claims under state or federal law related to his employment, including claims under the ADEA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII), the Employee Retirement Income Security Act, 29 U.S.C. § 1101 et seq. (ERISA), and the Oklahoma Anti-Discrimination Act, OKLA. STAT. tit. 25, § 1101 et seq. (OADA).

---

[3]   The parties have provided a copy of the Separation Agreement. Dkt. # 8-1. When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court may "consider documents referred to in the complaint if the documents are central to the plaintiff's claims and the parties do not dispute the documents' authenticity" without converting the motion into a motion for summary judgment. Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002). Plaintiff's complaint specifically references the Separation Agreement and it is integral to whether he may pursue claims against defendant, and the Court may consider the Separation Agreement without converting defendant's motion to dismiss into a motion for summary judgment.

Blue Cross provided Loden 45 days to consider the Separation Agreement, and the Separation Agreement expressly advised Loden to consult an attorney before signing it. Dkt. # 8-1, at 3. Loden retained an attorney and Loden's attorney told Tara Gruber, Blue Cross' Executive Vice President of Corporate Services, that the Separation Agreement did not comply with the Older Workers Benefit Protection Act (OWBPA), and he "detailed the extraordinary negative financial consequences that Loden would suffer as a result of the timing of his termination . . ." Id. at 4-5. Loden made a counteroffer under which he would waive his right to assert claims against Blue Cross if he received "an amount calculated to be commensurate with the employment benefits Loden expected to attain if he retired as planned on December 31, 2012."[4] Id. at 5. On December 1, 2010, Margaret McNutt, Vice President and General Counsel for Blue Cross, wrote back to Loden's attorney and stated that she would review the issues raised by Loden's attorney. Id. On December 10, 2010, McNutt communicated with Loden's attorney by telephone and letter, and McNutt provided Loden's attorney with additional information about the RIF. Id. Loden's attorney told McNutt that he would advise Loden to sign the Separation Agreement. Id. However, Loden did not believe that the waiver provision of the Separation Agreement complied with the OWBPA and he would "proceed accordingly." Id.

On June 8, 2011, Loden filed a charge of discrimination with the Oklahoma Human Rights Commission alleging a claim of age discrimination. Id. at 6. The Equal Employment Opportunity Commission issued a right to sue letter on October 27, 2011, and Loden filed this case on October 31, 2011. Loden initially alleged claims under the ADEA, the OWBPA, ERISA, the OADA, and

---

[4]     This appears to be the same amount that plaintiff is seeking as damages in this case, and he states that this amount exceeds $500,000. Id. at 11.

3

a state law tort claim for wrongful discharge in violation of an Oklahoma public policy. Blue Cross filed a motion to dismiss asserting that Loden's claims should be dismissed, because he waived his right to bring claims against Blue Cross by executing the Separation Agreement and he has failed to tender back the benefits he received under the Separation Agreement. Dkt. # 8. Loden filed an amended complaint (Dkt. # 10) alleging claims under the ADEA, ERISA,[5] and Oklahoma law only.

## II.

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face"and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy

---

[5] Plaintiff's ERISA claim arises under 29 U.S.C. § 1140, which states that it "shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled . . . ."

4

Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Defendant argues that plaintiff executed a valid waiver of his non-ADEA claims[6] and he has failed to tender back the consideration he received under the Separation Agreement, and plaintiff's non-ADEA claims should be dismissed based on the waiver provision of the Separation Agreement. Plaintiff responds that he executed the Separation Agreement under economic duress and the "tender back" doctrine does not apply under federal or Oklahoma law.

### A.

The parties do not dispute that the Separation Agreement contains a release in which plaintiff expressly waived the right to bring an ERISA claim and a wrongful termination claim under Oklahoma law, but the parties dispute whether the release in enforceable.[7] The Court will initially

---

[6] Plaintiff has alleged two claims arising under laws other than the ADEA. The amended complaint alleges an ERISA claim (second cause of action) and a claim for wrongful termination in violation of an Oklahoma public policy (third cause of action).

[7] Both parties focus on the requirements under federal law for the enforcement of a waiver of employment discrimination claims. Neither party has provided the Court with an analysis of Oklahoma law concerning the enforceability of a waiver or release of claims and, in this section of the Opinion and Order, the Court will limit its review to whether plaintiff's ERISA claim should be dismissed. However, defendant has raised a separate argument concerning application of the tender back doctrine under Oklahoma law and this issue is fully briefed, and the Court will separately consider whether plaintiff's state law claim should be dismissed due to his failure to restore the consideration he received before bringing this lawsuit. See infra III.B.

5

consider whether plaintiff's waiver of his right to assert an ERISA claim is enforceable, and this issue is governed by federal law. A release of federal employment discrimination claims, including an ERISA claim such as asserted by plaintiff, is valid if the release was knowingly and voluntarily executed by the employee, and this determination must be made by considering the totality of the circumstances. Madrid v. Phelps Dodge Corp., 211 Fed. App'x 676 (10th Cir. Nov. 29, 2006);[8] Wright v. Southwestern Bell Telephone Co., 925 F. 2d 1288, 1929 (10th Cir. 1991). The Tenth Circuit has identified the following factors that should be considered in determining whether a release was knowingly and voluntarily executed:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether [p]laintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

Torres v. Public Service Co. of New Mexico, 908 F.2d 687, 689-90 (10th Cir. 1990). An employee's decision to consult an attorney before executing a waiver gives rise to a presumption that a release of claims is enforceable. Myricks. v. Federal Reserve Bank of Atlanta, 480 F.3d 1036, 1041 (11th Cir. 2007) (an employee's decision to consult an attorney before signing a release gives rise to a presumption that the release is enforceable); Riley v. American Family Mut. Ins. Co., 881 F.2d 368, 373-74 (7th Cir. 1989) ("a plaintiff who executes a release within the context of a settlement pursuant to the advice of independent counsel is presumed to have executed the document knowingly and voluntarily absent claims of fraud or duress").

---

[8]   Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

6

The first Torres factor is the clarity and specificity of the release language. The Separation Agreement states:

> In exchange for the Separation Package received by you, you and anyone claiming through or on behalf of you, release [Blue Cross], its affiliates, successors, assigns, and all of their past and present employees, officers, directors, and agents from any and all claims you have or may have had against any of them, to the maximum extent permitted by law. This release includes, but is not limited to, any and all claims under local, state or federal, whether statutory or common law, and the [ADEA], [Title VII], the Civil Rights Act of 1991, the Americans with Disabilities Act, [ERISA], the Family and Medical Leave Act, the Worker Adjustment and Retraining Notification Act, the Oklahoma Commission on Human Rights Act, and the Illinois Human Rights Act, and the [OADA].

Dkt. # 8-1, at 2. Plaintiff does not dispute that the language of the release is clear and he acknowledges that he understood the rights he would be giving up by executing the Separation Agreement. Dkt. # 17, at 7. The second Torres factor, plaintiff's education and work experience, is also not in dispute, and plaintiff makes no argument that his lack of education or business experience tend to show that he failed to understand the terms of the release.

The next Torres factor is the amount of time that plaintiff had to consider the Separation Agreement before signing it. Plaintiff states that he had 45 days to review the Separation Agreement before he was required to decide whether to accept or reject it. Dkt. # 10, at 4. Plaintiff does not argue that Blue Cross failed to give him enough time to consider the Separation Agreement, and a review of cases applying the Torres factors shows that 45 days is a sufficient period of time. Nikkel v. Wakefield & Associates, Inc., 2012 WL 5571058 (D. Colo. Nov. 15, 2012) (19 days was a sufficient amount of time to review release); Ellison v. Lovelace Health Systems, 2000 WL 33126910 (D.N.M. July 12, 2000) (employee given 21 days to consider release); Anderson v. Lifeco Servs. Corp., 881 F. Supp. 1500 (D. Colo. 1995) (18 days was a reasonable period of time to review release). The Court finds that plaintiff was given a reasonable amount of time to review the

Separation Agreement before he was required to sign or reject it. The fourth Torres factor is whether plaintiff "knew or should have known his rights upon execution of the release." Torres, 908 F.2d at 689-90. Plaintiff does not dispute that he fully understood the Separation Agreement and that he knew that he would be waiving his right to bring employment discrimination claims against Blue Cross. Although it is clear from the amended complaint that plaintiff's disputes the validity of the waiver, it is also apparent that he understood what he was signing and the fourth Torres factor favors enforcement of the waiver.

One of the most important factors when considering the validity of a waiver is whether the plaintiff was permitted and/or encouraged to consult with an attorney before signing the waiver. See Torres, 908 F.2d at 690; Nikkel, 2012 WL 5571058 at *8. Plaintiff did consult with his attorney before signing the Separation Agreement, and this gives rise to a presumption that the waiver provision of the Separation Agreement is enforceable. Myricks, 480 F.3d at 104; Riley, 881 F.2d at 373-74. Defendant expressly advised plaintiff to consult an attorney before signing the Separation Agreement. Dkt. # 8-1, at 3 ("[Blue Cross] advises you to consult with an attorney prior to signing this Agreement."). Plaintiff's attorney advised him to sign the Separation Agreement and accept the separation package, even though plaintiff's attorney believed that the waiver provision did not comply with the ADEA and the OWBPA. Based on the allegations of the amended complaint, the Court finds that plaintiff had an opportunity to confer with an attorney and he had adequate time to consult with his attorney before signing the Separation Agreement.

The amended complaint also describes plaintiff's requests for additional information from defendant and his attempts to negotiate with defendant before executing the Separation Agreement. Plaintiff requested additional information that he believed should been provided under the ADEA and the OWBPA. Dkt. # 10, at 5. He also submitted a counteroffer demanding payment of "consideration in an amount calculated to be commensurate with the employment benefits Loden expected to attain if he retired as planned on December 31, 2012." Id. On December 10, 2010, defendant's representative, McNutt, and plaintiff's attorney spoke by telephone "about the termination and the proposed Separation Agreement." Id. Loden's attorney disagreed with defendant's assessment that it was in compliance with the OWBPA and ADEA, but there is no dispute that plaintiff received additional information from defendant. Id. Plaintiff argues that defendant "refused to negotiate," but the allegations of the amended complaint do not support this argument. Dkt. # 17, at 4. The mere fact that defendant did not respond to plaintiff's demand for full salary and employment benefits for two years, even though plaintiff would no longer be employed, does not tend to support an inference that defendant outright refused to negotiate with plaintiff. Plaintiff admits that he received additional information in response to his requests. The allegations of the amended complaint support a finding that there was an opportunity for negotiation of the Separation Agreement. Finally, plaintiff has not shown that he would have had any right to the continued receipt of his salary or health benefits after the termination of his employment, and the consideration for the Separation Agreement exceeded any benefit he would have received under his employment contract with defendant.

Plaintiff argues that he signed the Separation Agreement under economic duress, and he argues that his allegation of economic duress is sufficient at this stage of the case to defeat defendant's motion to dismiss. Some courts have found that economic duress can be considered as a factor in determining whether a party knowingly and voluntarily signed a release. Rutledge v. Int'l Bus. Mach. Corp., 1992 WL 189105 (10th Cir. Aug. 6, 1992)[9]; Bittner v. Blackhawk Brewery & Casino, LLC, 2005 WL 1924499 (D. Colo. Aug. 9, 2005). However, "economic pressure alone is insufficient to establish a claim of duress that would void an otherwise valid release." Nicholas v. Dep't of Health, State of Colorado, 951 F.2d 1259 (10th Cir. Dec. 11, 1991).[10] Plaintiff has not cited a single case where an allegation of economic duress was sufficient to show that a waiver that was otherwise knowingly and voluntarily executed could not be enforced. Plaintiff relies on Torrez to support his argument that the mere assertion of economic duress is sufficient at the pleading stage to defeat a motion to dismiss under Rule 12(b)(6). However, economic duress was not a factor in the Tenth Circuit's decision in Torrez, and the Tenth Circuit relied on numerous other circumstances to show that there was a factual dispute as to whether the waiver was knowingly and voluntarily executed. Torrez, 908 F.2d at 690. The Court finds that plaintiff's allegation of economic duress is not an independent basis for avoidance of the waiver provision of the Separation Agreement, but the Court will consider this as an additional factor in determining whether plaintiff knowingly and voluntarily executed the Separation Agreement. See Dorn v. General Motors Corp., 131 Fed. App'x 462, 468 (6th Cir. Apr. 28, 2005) (although the plaintiff was given an "unattractive choice" when

---

[9] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

[10] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

10

offered a severance package, the ordinary economic pressure caused by losing employment did not rise to the level of economic duress).

Assuming that the well-pleaded allegations of the amended complaint are true, the Court finds that plaintiff has not stated a plausible basis for plaintiff to avoid enforcement of the waiver provision of Separation Agreement as to his ERISA claim, and plaintiff's ERISA claim should be dismissed.[11] Plaintiff does not dispute that the language of the Separation Agreement was clear and unambiguous, that he was represented by counsel, and that he had sufficient time to review the Separation Agreement before signing it. In fact, it is clear that plaintiff was reluctant to sign the Separation Agreement because he knew that he would be waiving his right to assert claims against defendant. Dkt. # 17, at 7 ("Defendant correctly points out that Plaintiff's knowledge of the terms of the Separation Agreement and their meaning is not disputed."). Plaintiff received a substantial amount of consideration ($78,819) for signing the Separation Agreement. Even though defendant did not offer plaintiff additional money in response to plaintiff's counteroffer, defendant did provide additional information he requested under the OWBPA. In this case, plaintiff signed the Separation Agreement knowing what rights he would be giving up and he may not be heard to complain if the parties' agreement is enforced.

**B.**

Defendant also argues that plaintiff has waived his right to assert a state law claim for wrongful termination in violation of an Oklahoma public policy, because he has not tendered back the consideration he received under the Separation Agreement. Plaintiff responds that application

---

[11] In light of this finding, the Court declines to reach defendant's argument that plaintiff's ERISA claim should be dismissed due to his failure to tender back the consideration he received by entering the Separation Agreement.

11

of the tender back doctrine would constitute a violation of Oklahoma public policy, and he argues that the Court should exercise its equitable authority to allow plaintiff to proceed without requiring him to tender back the consideration.

Both parties cite OKLA. STAT. tit. 15, § 235, which provides:

Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

1. He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and,

2. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses to do so.

Rescission of a contract means that the parties are returned to the respective positions before the contract was entered, and both parties must restore everything of value to each other. Telex Corp. v. AiResearch Aviation Co., 460 F. 2d 215, 218 (10th Cir. 1972). Restoration of the opposing party to the status quo before execution of the contract is a condition precedent before a party may seek rescission of a contract. Berland's Inc. of Tulsa v. Northside Village Shopping Center, Inc., 506 P.2d 908, 912 (Okla. 1972). When the contract at issue is a release of claims, a claim for damages may be maintained before the plaintiff obtains a judgment for rescission if the release was fraudulently obtained. Sade v. Northern Natural Gas Co., 483 F.2d 230, 234 (10th Cir. 1973). Oklahoma law does not generally recognize a claim for partial rescission of a contract, and a contact "must be valid or void in toto and the parties must be placed in status quo." Ware v. City of Tulsa, 312 P.2d 946, 950 (Okla. 1957).

Plaintiff is effectively asking the Court for a partial rescission of the Separation Agreement. He seeks to keep the consideration he received from defendant for executing the Separation Agreement, but he also claims that the waiver provision of the Separation Agreement should be deemed unenforceable against him. Plaintiff cites Great American Life Ins. Co. of Hutchinson, Kansas v. Love, 35 P.2d 948 (Okla. 1934), for the proposition that a plaintiff is not precluded from attacking the validity of a fraudulently obtained release or waiver because he has not restored or tendered back any amounts he received from the opposing party. Dkt. # 17, at 12. However, the waiver in this case was clear and unambiguous and it was not obtained by fraud, and the rule stated in Great American Life Ins Co. has been applied only in cases involving waivers fraudulently obtained by insurance companies. American Life Ass'n v. Rogers, 281 P.2d 183 (Okla. 1955); Guaranty Life Ins. Co. v. Nelson, 101 P.2d 627 (Okla. 1940). Plaintiff also suggests that it is the "asserted willingness" of the party seeking rescission, rather than the actual restoration of the consideration, that is required in order to assert a claim or defense of rescission. Dkt. # 17, at 12 (quoting Berland's Inc. of Tulsa, 506 P.2d at 912). This argument fails for two reasons. First, plaintiff takes the quoted language out of context and Berland's clearly states that restoration to the opposing party is required even if this would impose a hardship on the party seeking to rescind. Berland's, 506 P.2d at 912. Second, plaintiff has not offered to tender back any amount to defendant and it is apparent from his response to the motion to dismiss that he is unwilling to do so. The Court has reviewed all of the cases cited by plaintiff and he cites no authority supporting his argument that Oklahoma law would treat a separation agreement between employer and employee differently than any other contract, and the Court finds that the restoration requirement is a condition precedent that must be satisfied for plaintiff to avoid enforcement of the waiver provision of the Separation

Agreement. Plaintiff has not restored or offered to restore the consideration he received from defendant for entering the Separation Agreement, and the release provision of the Separation Agreement bars plaintiff from asserting a state law claim for wrongful termination against defendant.

**IT IS THEREFORE ORDERED** that Defendant's Partial Motion to Dismiss and Brief in Support Thereof (Dkt. # 16) is **granted**. Plaintiff's ERISA claim (second cause of action) and claim for wrongful termination in violation of Oklahoma public policy (third cause of action) are hereby dismissed. The only remaining claim is plaintiff's ADEA claim (first cause of action).

**IT IS FURTHER ORDERED** that the Joint Motion to Extend Amended Scheduling Order (Dkt. # 44) is **granted**, and an amended scheduling order will be entered forthwith.

**DATED** this 13th day of September, 2013.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE